CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 10 2015

JULIA C. DUDLEY, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| FRANK VIGIL, JR.,<br>  Plaintiff, | ) | Civil Action No. 7:15-cv-00063 |
| v. | ) | **MEMORANDUM OPINION** |
| JOHN WALRACH, et al.,<br>  Defendants. | ) | By: Hon. Michael F. Urbanski<br>United States District Judge |

Frank Vigil, Jr., a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Vigil names as defendants Randall Mathena, the former Warden of the Red Onion State Prison ("ROSP"); John Walrach, ROSP's Assistant Warden; and Walter Sweeny, a ROSP Unit Manager. Vigil believes he should not be held in such a high security facility and that he was placed in segregation without due process. Defendants filed a motion for summary judgment, and Vigil responded, making the matter ripe for disposition. Because no defendant has violated a federal right actionable via § 1983, the defendants' motion for summary judgment is granted.

I.

Vigil is confined in Virginia pursuant to the Interstate Corrections Compact ("ICC") between Virginia and Colorado. The Colorado Department of Corrections asked the Virginia Department of Corrections ("VDOC") to house Vigil due to his high profile crimes in Colorado involving rape, kidnap, and murder; his gang history; his numerous enemies; his custody issues; and his escape attempt. Pursuant to the ICC, the VDOC chooses which institution Vigil would reside, and the VDOC chose to house Vigil at ROSP upon receiving him on June 29, 2014.

Upon initial intake at ROSP, Vigil was confined in segregation pending an initial classification review by the Institutional Classification Authority ("ICA"). Under VDOC

Operating Procedure ("OP") 830.1, the ICA is responsible for conducting classification hearings and reviews. ICA hearings may be held informally, like for an annual review, or may require a formal due process hearing, which occurs for reasons like removal from general population or changing a classification level outside of an annual review. OP 830.1 requires that an inmate receive notice within 48 hours of a formal due process hearing and be allowed to attend the formal hearing, to remain silent, to have a counselor or other employee present to advise him, to receive a copy of the decision, and to appeal the decision. When conducting an inmate's classification review, the ICA forwards only a recommendation for security classification. Except for assignments to Security Level S, a warden, or designee, reviews each ICA recommendation and has the discretion to approve or disapprove the ICA's recommendation for security level changes. The VDOC's Central Classification Services ("CSS") approves or disapproves assignments to Security Level S and may override mandatory restrictors or inmate assignment criteria.[1]

ROSP uses a goal-oriented, incentive-based segregation housing plan. When inmates exhibit positive behaviors and succeed in completing established goals of the program, they are rewarded with more privileges via their security classification. ROSP's Security Level S inmates are assessed and assigned to the following security levels, listed from most to least restrictive: Intensive Management ("IM") IM-0, IM-1, IM-2, and IM-SL6; Special Management ("SM") SM-0, SM-1, SM-2, and SM-SL6; Step Down-Level VI General Population; Structured Living-Phase 1 and Phase 2; and Security Level 5 General Population.

---

[1] An inmate may appeal a classification decision via administrative grievances, and a warden may appeal a CCS decision to the Director of Offender Management Services.

Eight days after he arrived at ROSP, the ICA reviewed Vigil's assignment on July 7, 2014, with Vigil present. The ICA recommended that Vigil be assigned to administrative segregation pending further review of his institutional file. Seven days later, Vigil had another ICA review that resulted in a recommendation to remain in segregation at Security Level 5. However, Assistant Warden Walrach recommended an increase in the security classification to Security Level S, which was approved by the CSS on July 15, 2014.

The ICA held Vigil's first 90 day review on September 11, 2014, with Vigil present, which ultimately resulted in his security level being changed to IM-0 on September 29, 2014. The ICA held the second 90-day review on November 25, 2014, with Vigil present, which ultimately resulted in his security level being reduced to IM-1 on January 13, 2015. The ICA held Vigil's third 90 day review on February 23, 2015, with Vigil present, which ultimately resulted in his security level remaining at IM-1 on March 2, 2015.[2] The ICA held Vigil's fourth 90 day review on May 19, 2015, with Vigil present, which ultimately resulted in his security level being reduced to IM-2 on June 4, 2015.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable

---

[2] Vigil commenced this action in February 2015.

3

inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-23. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

### III.

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty or property. To prove a violation of due process, the inmate must be able to show that the government deprived him of a liberty interest. See, e.g., Sandin v. Conner, 515 U.S. 472, 478-79 (1995). To demonstrate a liberty interest, an inmate must show (1) the denial of an interest that can arise either from the Constitution itself or from state laws or policies, and that (2) the denial imposed on him an atypical and significant hardship. Prieto v. Clarke, 780 F.3d 245, 251 (4th Cir. 2015). The Constitution itself vests no liberty interest in an inmate being housed in a particular correctional facility, but state laws and policies can create a liberty interest in an inmate being housed in a particular correctional facility if the laws and policies place substantive limitations on official discretion. Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994).

4

Even if a state law or policy requires both substantive criteria and a procedural process to make classification decisions, however, the law or policy does not create a constitutionally protected liberty interest if a reviewing authority may exercise discretion and override a classification decision under the law or policy. Id. at 595. The Director of the VDOC created a classification system, OP 830.1, pursuant to Virginia Code § 53.1-32.1. VDOC's OP 830.1 provides opportunities for review and rejection of the ICA's classification recommendations and does not mandate a particular classification decision. Consequently, neither Virginia Code § 53.1-32.1 nor OP 830.1 creates a constitutionally protected liberty interest for Vigil to have a particular custody classification.

Since Vigil has no liberty interest in being housed in any particular prison or in a prison with less restrictive conditions, Vigil's incarceration in ROSP does not violate his due process rights, and Vigil does not have a due process right to be placed in a less secure prison. See, e.g., Meachum v. Fano, 427 U.S. 215, 224-25 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons."). To the extent that Vigil is alleging that his placement in ROSP violates the ICC, he is wrong. The ICC authorized the VDOC to select ROSP as Vigil's place of incarceration.

Vigil also fails to demonstrate that conditions of his confinement constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See, e.g., Sandin, 515 U.S. at 484. Vigil complains that he was not properly oriented to segregation housing, had no privileges for 75 days, gets cleaning materials only once a week, has no control over flushing his toilet, has inadequate nutrition, has no outside view, gets only three showers and five recreation periods per week, which have been repeatedly denied, hears racist remarks,

5

Case 7:15-cv-00063-MFU-RSB   Document 42   Filed 12/10/15   Page 5 of 7   Pageid#: 361

was falsely accused of rule violations, was threatened by a counselor, denied legal calls, and was denied food, property, and educational opportunities. However, none of these conditions is so atypical as to impose significant hardship, especially in light of the facilities and amenities available to Vigil. Cf. Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). Segregation cells have a bed, mattress, sink, toilet, table, and a shelf. A segregation inmate's out of cell activities may include showers at least three times a week, at least one hour of recreation time five days each week, and access to the medical department. Segregation inmates may purchase items from the commissary, and they receive the same number and type of meals and have the same mail privileges as general population inmates. Segregation inmates are allowed legal visits, opportunities for regular visits, two telephone calls per month, authorized religious property, and other personal property. Segregation inmates have access to library books, religious materials, and religious, educational, medical, and counseling services. Segregation inmates also have access to administrative remedies.

  Vigil further alleges that the conditions in segregation violate the ICC and VDOC policies. However, this claim, which is a legal conclusion not entitled to an assumption of truth, is not supported by the record. The ICC states that it was the VDOC's responsibility to confine and care for Vigil in conformity with the conditions of confinement and care provided to similar inmates not confined pursuant to the ICC. Vigil was afforded the minimal necessities of life's basic necessities along with his peers at ROSP. Moreover, a claim that prison officials have not

6

followed their own independent policies or procedures also does not state an actionable claim via § 1983. See, e.g., United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990). Accordingly, the defendants are entitled to qualified immunity and summary judgment.

## IV.

For the foregoing reasons, the court grants the defendants' motion for summary judgment. Finding no need to impose sanctions on the defendants, Vigil's motion for sanctions is denied.

ENTER: This 10th day of December, 2015.

/s/ Michael F. Urbanski
United States District Judge